OPINION
Appellants, Shalenia and Paul Hogle, appeal the August 9, 1999 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling appellants' objections to the magistrate's decision granting permanent custody of appellants' daughter, Angel Hogle, to appellee, Franklin County Children Services ("FCCS"). We affirm.
On October 18, 1996, Angel Hogle was born to appellants, Shalenia and Paul Hogle. At the time, Shalenia had three other children, all of whom previously had been removed from Shalenia's care by FCCS. Given this background, FCCS sought to work with appellants on a voluntary basis to ensure Angel's safety and care. Appellants, however, rejected FCCS's assistance.
On November 22, 1996, Angel was admitted to Children's Hospital emergency room because she had been overmedicated by her parents. On that date, FCCS removed Angel from the care of her parents. Subsequently, a complaint was filed alleging Angel to be a neglected and dependent minor, and FCCS was granted temporary custody of Angel.
On May 15, 1997, the trial court, by judgment entry adopting several juvenile court magistrate decisions, adjudicated Angel to be a neglected and dependent minor, granted temporary court commitment to FCCS pursuant to R.C. 2151.353(A)(2), and pursuant to R.C. 2151.412, adopted and made part of its dispositional order a case plan approved by the parties, including appellants. Under the case plan, appellants were required to satisfy the following objectives: (1) meet Angel's development, physical and emotional needs one hundred percent of the time; (2) engage in services and make themselves available to FCCS; (3) maintain a residence that met minimum community standards; (4) engage in parenting class and apply what they learned to their everyday lives; and (5) resolve conflict via compromise and discussion. As to this last objective, appellants were required to participate in couples counseling and anger management counseling. Finally, under the case plan, appellants had weekly one and one-half hour supervised visitation with Angel.
Eventually, both appellants participated in and completed the required parenting classes. Appellants ultimately, however, refused to participate in couples counseling or anger management counseling. For a variety of reasons, appellants also canceled several of their weekly visits with Angel.
On November 26, 1997, FCCS moved for permanent custody of Angel. In so doing, FCCS contended that permanent commitment was in the best interest of Angel and that appellants had failed continuously and repeatedly to substantially change the conditions causing Angel to be placed outside their home. An evidentiary hearing was held before a magistrate who, on January 26, 1999, filed a decision granting permanent custody to FCCS. Appellants filed objections, and a transcript of the evidentiary hearing before the magistrate was filed with the trial court.
On July 23, 1999, the trial court held a hearing in which oral arguments were presented by the parties. On August 9, 1999, the trial court filed its decision and judgment entry overruling appellants' objections, adopting the decision of the magistrate, and granting FCCS' motion for permanent court commitment. In its decision, the trial court specifically found, by clear and convincing evidence, that each appellant had failed continuously and repeatedly to substantially remedy the conditions causing Angel to be placed outside the home and, as such, Angel could not or should not be placed with either parent within a reasonable time. See R.C. 2151.414(E)(1). In particular, the trial court found that appellants had failed to substantially comply with the objectives of the case plan and had failed to take advantage of the medical, psychological, social, and rehabilitative services made available to them, especially couples counseling and anger management counseling. Finally, the trial court specifically found, by clear and convincing evidence, that it was in Angel's best interest to grant permanent custody to FCCS. See R.C. 2151.414(B).
It is from the August 9, 1999 judgment entry that appellants appeal, raising the following five assignments of error:
ASSIGNMENT OF ERROR I
 REVERSIBLE ERROR EXISTS WHEN THERE IS INSUF-FICIENT EVIDENCE TO SHOW BY A CLEAR AND CONVINCING STANDARD OF PROOF THAT APPELLANTS FAILED TO REMEDY THE CONDITION THAT LED TO THE PLACEMENT OF THEIR CHILD OUTSIDE OF THEIR HOME.
ASSIGNMENT OF ERROR II
 THE DECISION TO GRANT FCCS' MOTION FOR PCC UNDER REVISED CODE § 2151.414 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR III
 THE ABSENCE OF A FAIR AND IMPARTIAL TRIER OF FACT VIOLATES THE DEFENDANTS' DUE PROCESS RIGHTS UNDER THE STATE AND FEDERAL CONSTITU-TIONS, THEREBY CONSTITUTING REVERSIBLE ERROR.
ASSIGNMENT OF ERROR IV
 REVERSIBLE ERROR OCCURRED WHEN CASE WORKERS MADE RECOMMENDATIONS AND STATED OPINIONS THAT WERE NOT BASED ON PERSONAL KNOWLEDGE AND/OR WERE NOT EVIDENCED BY ANY QUALIFICATION TO TESTIFY AS AN EXPERT OR OTHERWISE ON THE ULTIMATE ISSUE, IN VIOLATION OF THE DEFENDANTS' STATE AND FEDERAL PROCEDURAL DUE PROCESS RIGHTS AND IN VIOLATION OF EVIDENCE RULES 701, 702, 703, 704 AND 705.
ASSIGNMENT OF ERROR V
 DEFENDANTS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THEIR RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTI-TUTIONS.
In their first and second assignments of error, appellants challenge the sufficiency and manifest weight of the evidence supporting the trial court's conclusion granting permanent custody of Angel to FCCS. Under R.C. 2151.414(B), a court may grant permanent custody of a child who is neither abandoned nor orphaned to a public children services agency only if the court finds by clear and convincing evidence that: (1) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; and (2) it is in the best interest of the child to grant permanent custody of the child to the agency. Appellant contends that there was insufficient evidence to support either finding in this case and/or such findings were against the manifest weight of the evidence. We disagree.
Permanent custody judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. In re Brofford (1992), 83 Ohio App.3d 869,876-877. Further, the findings of a trial court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony. In reBrofford, supra, at 876; In re Brown (1994), 98 Ohio App.3d 337,342.
In deciding whether a child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must consider all relevant evidence and determine by clear and convincing evidence whether one or more of sixteen enumerated factors exist as to each of the child's parents. R.C. 2151.414(E); see In re William S. (1996),75 Ohio St.3d 95, 99. If one or more factors exist, the court must enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re William S., supra, at 99.
Here, the trial court found that the factor specifically enumerated in R.C. 2151.414(E)(1) applied and, thus, mandated a finding that Angel could not be placed with appellants within a reasonable time or should not be placed with appellants. R.C.2151.414(E)(1) provides:
 Following the placement of the child outside [the child's] home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly * * * to substantially remedy the conditions causing the child to be placed outside [the child's] home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. [Emphasis added.]
Appellants contend that, in finding that they had failed to remedy the condition causing Angel to be placed outside their home, the trial court improperly relied on appellants' failure to participate in couples counseling and anger management counseling as required under the case plan. According to appellants, neither couples counseling nor anger management related to the reason Angel was placed outside their care — i.e., the single, accidental overmedication of Angel on November 22, 1996. Further, appellants argue that, without reference to their failure to participate in such counseling, the evidence in the record does not support a finding that they failed to substantially complete the case plan or more importantly, failed to remedy the conditions causing Angel's placement outside their home.
FCCS counters that appellants' admitted failure to participate in the required counseling under the case plan is alone sufficient to support the trial court's determination under R.C. 2151.414(E)(1) that appellants failed to remedy the conditions causing Angel's removal from their care. According to FCCS, noncompliance with the case plan is grounds for termination of parental rights.
A parent's failure to complete all aspects of a case plan is not per se grounds for finding that a parent has failed to remedy the conditions causing the child's removal from the home. "A party's failure to exactly comply with the case plan does not necessarily constitute a failure to satisfy R.C. 2151.414(E) (1), as case plans almost invariably address numerous issues which may be only ancillary to the reasons for a child's removal from the home." In re Sara H. (Dec. 16, 1994), Lucas App. No. L-94-116, unreported; see, also, In re Andrew Brock (Aug. 31, 1998), Clermont App. No. CA97-12-108, unreported (compliance with case plan is not the standard per se for terminating parental rights and granting custody of a child to agency); see, also, In reWilliam S., supra, at 96 (affirming reversal of grant of permanent custody of abused child, finding that despite the mother's failure to make significant progress on parenting objectives listed in the case plan, she had remedied the condition which led to the child's removal because the mother's roommate, who was responsible for the abuse, no longer lived with the mother); Cf. R.C. 2151.412(E)(1) ("A party that fails to comply with the terms of the journalized case plan may be held in contempt of court"). Thus, under R.C.2151.414(E)(1), the relevant inquiry is not simply whether the parents complied with all aspects of the case plan but whether they complied with the terms and objectives of a case plan related to the conditions causing the child's removal.
Here, the requirements that appellants participate in couples counseling and anger management were related to the conditions causing Angel's removal. "The best statement of the reasons for a child's removal from the home is the complaint which resulted in such removal." In re Sara H., supra; see, also, In reWilliam S., supra, at 100. Here, the complaint alleged that Angel was a neglected and dependent child and made the following factual allegations in support:
 * * * PARENTS ARE NOT MARRIED BUT RESIDE TOGETHER. MOTHER HAS A HISTORY OF NEGLECT ISSUES. THREE OLDER CHILDREN OF THIS MOTHER ARE IN FCCS PLACEMENT. NEITHER PARENT IS COOPERATIVE WITH SERVICES OFFERED THROUGH FCCS WHICH INCLUDES PUBLIC HEALTH NURSE AND COMMUNITY SERVICE WORKER. ON 11/21/96 CHILD WAS TRANSPORTED TO HOSPITAL WITH AN OVERDOSE OF REFLUX MEDICATION. FATHER EVICTED MOTHER FROM HOME ON 11/21/96 AND IT REMAINS UNCLEAR AS TO WHO OVERMEDICATED THE CHILD. FATHER HAS BEEN THREATENING TO FCCS STAFF AND BEING BELLIGERENT WITH HOSPITAL STAFF. * * *
Further, the magistrate specifically noted in her decision to grant permanent custody that "initially the child was removed because Paul and Shalenia had an argument and Paul was saying that Shalenia wanted to kill the child and that she was trying to kill the child." (Tr. 12/23/98, at 69.) Thus, while the overmedication incident may have been the precipitating event triggering Angel's removal, appellants' relationship with each other and their hostility toward FCCS and medical personnel were underlying conditions resulting in Angel's removal.
Consequently, the record contains competent, credible evidence supporting the trial court's determination that appellants failed to remedy the conditions that caused Angel's removal and, as such, Angel cannot or should not be placed with appellants within a reasonable time.
We similarly find that there is competent and credible evidence supporting the trial court's determination that it was in Angel's best interest to grant permanent custody to FCCS. "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Awkal (1994),95 Ohio App.3d 309, 316.
The version of R.C. 2151.414(D) applicable to this case provides that when determining a child's best interests, the court must consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
At trial, evidence relating to several of these factors indicates that permanent custody is in the best interest of Angel. Angel has been in foster care since she was one month old, a period of over two years when the evidentiary hearing concluded. Both caseworkers familiar with the case testified that they did not see a close bond between Angel and her parents during their visits with Angel and that appellants often needed prompting to actively interact with Angel. One caseworker also testified that Angel appeared more attached to her foster parents. The caseworkers also testified that appellants missed several weekly visits, usually for reasons (e.g., missed the bus; waiting for a check; threats of bad weather; broken toilet; one parent sick) that were unremarkable or did not necessitate both parents missing the visit. At trial and at the objection hearing, the guardian adlitem argued in favor of the motion for permanent custody. Finally, the evidence indicated that, even absent permanent custody, reunification of Angel with appellants was not appropriate in the near future given appellants' failure to follow the case plan. However, Angel's present foster family was willing to adopt her.
In sum, there was sufficient evidence to support all of the essential elements required by R.C. 2151.414 supporting an award of permanent custody of Angel to FCCS, and the trial court's ruling was not against the manifest weight of the evidence. Appellants' first and second assignments of error are overruled.
In appellants' third assignment of error, appellants contend that the magistrate was not fair and unbiased, that the magistrate's bias tainted the trial court's decision on appellants' objections, and that such bias deprived appellants of their due process rights under the state and federal constitutions. Appellants' failed, however, to raise any allegation of magistrate bias or due process violation in their objections to the juvenile court. As such, appellants have waived this issue on appeal. Juv.R. 40(E)(3)(b); see, also, In rePatrick Walker (Sept. 16, 1999), Franklin App. No. 98AP-1548, unreported. Further, appellants have cited no specific examples of bias by the juvenile court. As such, appellants' third assignment of error is overruled.
In their fourth assignment of error, appellants contend that the magistrate erred when it allowed the caseworkers to give improper opinion testimony in violation of applicable evidence rules and appellants' constitutional due process rights. Again, appellants failed to challenge the admission of such testimony in their objections filed with the juvenile court. As such, appellants have waived this issue on appeal.
Finally, in their fifth assignment of error, appellants contend that they were deprived of their constitutional right of effective assistance of trial counsel under the standards set forth in Strickland v. Washington (1984), 466 U.S. 668. See Jonesv. Lucas Cty. Children Services Bd. (1988), 46 Ohio App.3d 85, 86
(Strickland standard is applicable to permanent custody proceedings). In particular, appellants contend that their trial counsel were ineffective because they: (1) failed to object to the lapse of the temporary custody order entered on May 15, 1997; (2) failed to request the appointment of independent psychological experts at state expense to assist appellants in the permanent custody proceedings as allowed by this court's decision in In re:Penny Sue Stanley (Dec. 7, 1993), Franklin App. No. 93AP-972, unreported; and (3) repeatedly failed to object to hearsay testimony.
In order to prevail on a claim of ineffective assistance of counsel under Strickland, appellants must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v.Reynolds (1998), 80 Ohio St.3d 670, 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland, supra, at 686. Thus, a two-part test is necessary to examine such claims. First, appellants must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Keith (1997),79 Ohio St.3d 514, 534. Second, appellant must show that, but for the counsel's errors, there is a reasonable probability that the results of the trial would be different. Id. "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." State v. Carpenter (1996), 116 Ohio App.3d 615,622.
The burden of showing ineffective assistance of counsel is on the party asserting it. State v. Smith (1985), 17 Ohio St.3d 98
. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673,675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carter (1995), 72 Ohio St.3d 545,558 ("[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel");Carpenter, supra, at 626 (court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). Applying these standards, we find that appellants failed to show that their counsel were ineffective.
First, counsel's failure to object to the lapse of the May 15, 1997 temporary custody order was immaterial to the outcome of the permanent custody motion. Pursuant to R.C. 2151.353(F), a temporary custody order terminates one year after the earlier of the date on which the complaint in the case was filed or the date the child was first placed into shelter care, unless the agency files a timely motion pursuant to R.C. 2151.415. Under R.C.2151.415(A), a motion for permanent custody must be filed by the agency no later than thirty days prior to the one year "sunset date" set for in R.C. 2151.353(F). Here, Angel was initially taken into custody on November 22, 1996, but FCCS's motion for permanent custody was not filed until November 26, 1997, after the period set forth in R.C. 2151.415(A). Thus, pursuant to R.C.2151.353(F), the temporary custody order of Angel technically terminated on November 22, 1997.
The passing of the sunset date pursuant to R.C.2151.353(F), however, does not divest juvenile courts of jurisdiction to enter dispositional orders, including orders for permanent custody. In re Young Children (1996), 76 Ohio St.3d 632, syllabus. Rather, even if a temporary custody order has lapsed, courts have discretion to make a dispositional order in the best interests of the child if "the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated." Id. at 638. Here, the trial court's decision granting permanent custody was based upon appellants' failure to remedy the conditions initially resulting in Angel's removal from their care and because such an order was in Angel's best interest. As such, the trial court had discretion to grant the permanent custody motion despite the lapse of the temporary custody order. See In the Matter of Cain Davis (Nov. 5, 1999), Pickaway App. No. 99 CA 20, unreported (trial court did not err in granting permanent custody to agency after temporary custody lapsed since trial court found that parents failed to sufficiently mitigate problems resulting in child's removal). Thus, appellants have failed to show that there is a reasonable probability that the results of the trial would have been different but for their counsels' failure to object to the lapse of the temporary custody order.
Second, appellants were not entitled to an independent psychological expert at state expense under this court's decision in In re: Penny Sue Stanley, supra. In In re: Penny Sue Stanley, this court held that where a juvenile court grants the state's request for a psychological examination of an indigent parent to be performed by an examiner selected and paid by the state, due process requires that the parents be provided an expert of their own at state expense. This rule, however, is implicated only when the indigent parent's mental condition is central to the dependency, neglect, or abuse determination and/or forms the basis of the agency's motion for permanent custody. See Id. (noting that complaint alleging dependency under R.C. 2151.04(B), which defines a dependent child as one that lacks adequate parental care by reason of mental or physical condition of the parents, raises, as a central issue, the mental or physical condition of the parent); In re: Angelo Brown (Nov. 26, 1986), Hamilton App. No. C-850878, unreported (trial court erred in denying indigent parent's motion for appointment of a psychiatric expert to assist parent in permanent custody proceedings when parent's chronic schizophrenia formed the basis of the agency's petition for dependency and permanent custody); In re Shaeffer Children (1993),85 Ohio App.3d 683 (trial court erred in denying indigent parent's motion for court-appointment psychiatric assistance when parent's mental health was the basis of the agency's motion for permanent custody and a determinative factor in the custody proceedings).
Here, appellants' mental condition was not the basis of FCCS's motion for permanent custody of Angel. Nor was appellant's mental health a basis upon which the trial court granted the motion. Rather, the basis for the motion and order granting permanent custody was appellants' failure to remedy the conditions causing Angel's removal, including appellants' failure to participate in couples counseling and anger management. As such, appellants have failed to show that their trial counsel was objectively deficient in failing to seek appointed psychiatric assistance.
Finally, appellants do not cite to any specific examples of when trial counsel failed to object to hearsay testimony, let alone hearsay testimony that likely altered the results of the trial. In sum, appellants have failed to establish that they are entitled to a new trial on the basis of ineffective assistance of trial counsel. Appellants' fifth assignment of error is overruled.
For the foregoing reasons, all five of appellants' assignments of errors are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
 _______________ LAZARUS, J.
BRYANT and KENNEDY, JJ., concur.